**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X
                                       :

ASSOCIATION OF COMMUTER RAIL      :
EMPLOYEES LOCAL NO. 9,                  :
                                       :
                    Plaintiff,      :      Case No.
                                       :
      - against -                  :
                                       :
METRO-NORTH COMMUTER RAILROAD     :
COMPANY,                        :
                                       :
                    Defendant.    :
                                       :
----------------------------------------------------------------X

## COMPLAINT

        The Association of Commuter Rail Employees Local No. 9 ("A.C.R.E." or "Union"), by its undersigned attorneys, for its complaint against Metro-North Commuter Railroad Company ("MNR" or the "Company"), states as follows.

## INTRODUCTION

        1.      This is an action for injunctive relief to preserve status quo working conditions under the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq*., and to prevent an unlawful unilateral change in terms and conditions of employment and working conditions by MNR during the midst of ongoing negotiations and mediation under the RLA.  A.C.R.E. is the exclusive collective bargaining representative of the MNR locomotive engineers.  For the past twenty years, MNR has utilized a time and attendance monitoring system enshrined in the parties' collective bargaining agreement called the Crew Management System ("CMS").  When utilizing CMS, engineers log into a CMS computer terminal using their employee identification number and key into a sign-in screen to enter their arrival time.  Notwithstanding these

established terms and conditions of employment, MNR, after having delayed A.C.R.E.'s requests to meet and confer regarding MNR's desire to change the time and attendance monitoring system, MNR has today, September 18, 2019, unilaterally implemented an entirely new time keeping system called KRONOS, which requires -- in direct violation of New York State law -- that MNR locomotive engineers biometrically scan their finger upon arriving at and leaving work each day.

2.      MNR's actions have triggered a "major dispute" under the RLA, and the Company's intended unilateral changes to the status quo, in defiance of RLA bargaining and status quo obligations, must be enjoined.  MNR must be ordered to bargain in good faith concerning its contemplated modifications to established terms and conditions of MNR locomotive engineer employment and to refrain from unilaterally modifying such terms and conditions of employment until the bargaining provisions of the RLA have been exhausted.

## JURISDICTION AND VENUE

3.      This court has jurisdiction over the present action under 28 U.S.C. §§ 1331 and 1337 because this case arises under the RLA, a federal statute that affects interstate commerce.

4.      Venue properly lies in this judicial district under 28 U.S.C. § 1391 because defendant MNR is headquartered in and does business in this judicial district and A.C.R.E. is headquartered in this judicial district.

## PARTIES

5.      A.C.R.E. is an unincorporated association and the duly authorized bargaining "representative" as defined in Section 1, Sixth of the RLA (45 U.S.C. § 151, Sixth) for persons in the employ of MNR as locomotive engineers.

6.      MNR is a company engaged in the transportation of passengers by rail in interstate commerce.  It operates railroad-related facilities in this judicial district at which employees represented by A.C.R.E. work.  MNR is a "carrier" as defined in Section 1, First of the RLA (45 U.S.C. § 151, First).

## FACTUAL BACKGROUND

**The CBA and Ongoing RLA Negotiations and Mediation**

7.      A.C.R.E. has been the collective bargaining representative of the MNR locomotive engineers (the employees that operate the commuter trains) since 2000.

8.      A.C.R.E. and MNR are parties to a collective bargaining agreement ("CBA") governing MNR locomotive engineer terms and conditions of employment.  The CBA became amendable pursuant to the terms of the RLA on January 15, 2017.

9.      Under the RLA, the parties are obligated to maintain the "status quo" and the carrier may not make unilateral changes in rates of pay, rules, or working conditions until the lengthy process of bargaining and mediation set forth in Sections 5 and 6 of the RLA are exhausted.

10.      Since the CBA became amendable, A.C.R.E. and MNR have engaged in RLA bargaining for a successor agreement.

11.      On July 23, 2019, A.C.R.E. invoked the services of the National Mediation Board ("NMB") under Section 5 of the RLA and, on July 31, 2019, the NMB docketed the A.C.R.E.-MNR bargaining dispute for mediation.  The parties are presently scheduled to meet with the NMB-designated mediator on October 17, 2019.

12.      In 1999, Metro-North determined to implement a new time and attendance system called the Crew Management System.  Metro-North bargained with the Union's predecessor union concerning CMS, and the parties entered into a three-page letter agreement

concerning CMS that was incorporated into the CBA (at pages 95-97).  The CMS time keeping system that pertains to MNR locomotive engineers is used, and has been used since the time it was contractually agreed to in 1999, to track the working hours of MNR locomotive engineers.

13.     That letter of agreement has continued, unmodified, in all subsequent CBAs covering the MNR locomotive engineers.  That contractually agreed to CMS system has continued at all times since as an established term and condition of employment for the MNR locomotive engineers.

14.     At no time since bargaining commenced to modify the current CBA has MNR sought to open or modify the CBA to make changes to the agreed-upon CMS time keeping system.

**Metro North's Modification of the Status Quo**

15.     Pursuant to CMS, upon arriving at work (the train station that serves as their crew "base"), engineers log into a CMS computer terminal using their employee identification number and key into a sign in screen to verify their attendance (and for payroll purposes).

16.     MNR locomotive engineers sometimes end their work day at different train stations than the station at which they started.  When that occurs, MNR locomotive engineers are not required to return to their home base to log back into CMS and sign out. Rather, on their next work day, the locomotive engineer may key into the CMS system at the beginning of their next assignment which automatically verifies the end of the prior assignment based on the engineer's "bulletined" schedule (that is, the pre-planned scheduled times of work).

17.     On May 17, 2019, Anita L. Miller, the Chief Employee Relations and Administrative Officer of the MTA (MNR's parent company), laid out MTA's plans to use

"Kronos biometric timeclocks" at all locations at which MNR locomotive engineers report to work. She stated that in "locations that do not currently use Kronos" -- such as the locations at which the MNR locomotive engineers operate -- "we will be migrating employees to a Kronos platform." No date was then specified for the commencement of implementation of the new system. She further stated that she was requesting that MNR meet with union representatives concerning the change.

18.     MNR then intended that the new KRONOS electronic time keeping system would replace the time keeping portion of the CMS system for MNR employees. The KRONOS system, unlike the existing CMS, would require the MNR locomotive engineer to have their fingers biometrically scanned when they arrived at and left work for the day. The system would *require* that the scan also be done at the end of an employee's work day, unlike the current CMS system where end of day signing out is not required. This requirement could have an impact on other terms and conditions of employment such as pay. For example, the current practice is that an engineer's pay is not impacted if they sign out early or sign in late. It is unclear whether an employee whose scan is taken early or late will have their pay reduced. It is also unclear how the KRONOS biometric scanning system will impact payment practices for deadhead trains (when the engineer operates equipment without revenue generating passengers aboard) or test trains at the beginning or end of an assignment that does not run (engineers presently are compensated for such scheduled time).

19.     The CBA contains no provision which arguably provides MNR with the right to unilaterally implement a new biometric finger scan time keeping system that is different from and that would replace the CMS.

- 5 -

20.     Not only would mandatory biometric finger scanning present substantial privacy concerns, but it also would violate a New York law that specifically prohibits employers from fingerprinting their employees.  *See* N.Y. Lab. Law § 201-a ("no person, as a condition of securing employment or of continuing employment, shall be required to be fingerprinted").  The New York State Department of Labor, in an opinion letter dated April 22, 2010, opined that a "biometric device" that "interprets biometric information from individuals' fingerprints," is prohibited by New York State law, even if it does not store the biometric information.  *See* Exhibit A.  While MNR professes that biometric finger scanning is not fingerprinting, they have offered no substantiation for that alleged distinction.

21.     On June 11, 2019, A.C.R.E. sent a letter to the New York State Department of Labor informing it of MNR's intent to implement an unlawful biometric finger scanning system.  The Department of Labor has not yet responded to A.C.R.E.'s letter.

22.     A.C.R.E. has urged MNR to defer implementation of its new planned system until the Department of Labor has confirmed that MNR can proceed with this system notwithstanding the prior Department of Labor opinion letter and the prohibitions of New York law, but MNR has refused to do so.

23.     In a meeting with MNR on or about August 2019, all meeting attendees -- both management and labor -- agreed there were many open, unresolved questions concerning KRONOS's implementation, and that it would be important and necessary to, at minimum, issue an agreed upon Q&A to employees about the new system prior to its implementation.

24.     On August 8, 2019, the General Chairman of A.C.R.E. wrote to MNR's Vice President of Labor Relations and expressed that MNR's announced intent to proceed with "implementation of the Kronos biometric attendance and timeclocks is a unilateral change to our

agreement and working conditions" and that MNR must negotiate the change with the Union. The General Chairman closed the letter by stating that A.C.R.E. looks "forward to meeting with you to discuss this matter further."

25.     MNR did not respond to the August 8 letter.

26.     On August 29, 2019, MNR sent an email to all employees reminding them that "biometric enrollment of employees in the new clocks is currently underway" and that employees must begin the biometric finger scanning on September 4, 2019.

27.     On August 30, A.C.R.E.'s General Chairman wrote to the President of Metro-North.  He emphasized that the Union was still awaiting a response to its August 8 letter requesting a meeting to discuss the many issues presented by the proposed KRONOS / biometric system.  The Chairman stressed, again, that implementation of the KRONOS system without a negotiated agreement with A.C.R.E. would be an unlawful unilateral change in the established terms and conditions of employment for the engineers.  He requested a prompt meeting in advance of the implementation date "so that we can fully discuss questions and concerns which we and the locomotive engineers who we represent have regarding this contemplated entirely new procedure."  He further offered numerous specific dates the following week, including before September 4, for a meeting and requested that MNR postpone the September 4 implementation date.

28.     Only after receiving this letter did MNR agree to meet.  MNR agreed to postpone the implementation date until September 18, 2019, and Cathy Rinaldi, the President of MNR, met with A.C.R.E. on September 3, 2019 at 3:00pm.  MNR President Rinaldi explained that she was not highly knowledgeable about KRONOS, but its implementation was a political imperative being imposed on the MTA and MNR "from Albany."  At the meeting, MNR agreed

to work jointly with A.C.R.E. to draft a Q&A concerning the new system that could be distributed to employees.  However, MNR also informed A.C.R.E. that, once implemented by MNR, it would discipline MNR locomotive engineers who refused to allow their fingers to be biometrically scanned.  Engineers presently are not disciplined if they forget to key in to the CMS system at the beginning of their shift.

29.     Shortly after the meeting, A.C.R.E. drafted a Q&A and sent it for comment to MNR President Rinaldi on September 6, 2019.  Ms. Rinaldi responded that "we appreciate your willingness to work with us on this."

30.     MNR delayed responding concerning either the Q&A or the KRONOS implementation until September 16, 2019.

31.     MNR's proposed responses to the Q&A highlight the impending changes to the status quo.  MNR concedes that employees will be required to "swipe in at the start of each shift *and* end of each shift" at a KRONOS clock (emphasis added).  It makes clear that locomotive engineers now will be subject to discipline for late or missed swipes.  MNR also makes plain that finger scanning will be required, while claiming that the "biometric system" is "not a fingerprint" but only a "finger imaging" system.

32.     In a September 16, 2019 cover letter to MNR's Q&A response, MNR Vice President of Labor Relations Andrew J. Paul announced that all employees "will be required to swipe in and out on a Kronos timeclock effective Wednesday, September 18, 2019."

33.     A.C.R.E. met with Mr. Paul and other MNR management on September 17, 2019.  At the meeting, MNR again refused to negotiate an agreement concerning the KRONOS biometric system, instead insisting that MNR could unilaterally implement the program as a "policy."

34.     Later in the day on September 17, 2019, A.C.R.E. sent Mr. Paul a letter

stating that "any attempt by the railroad to implement changes through Metro North 'policy'

rather than through an agreement with the Union does not conform with the obligations imposed

upon Metro North by the Railway Labor Act and would unlawfully modify established terms and

conditions of employment that apply to the locomotive engineers."  Nevertheless, A.C.R.E.

emphasized that it was "prepared and willing to continue to meet with Metro North to negotiate a

mutually acceptable agreement," and requested that MNR delay implementation pending an

agreement.

35.     At 7:50 pm, Mr. Paul wrote A.C.R.E. to once again state that all employee

"are obligated to both swipe in and out of the Kronos effective tomorrow, Wednesday,

September 18th."  He further "advised that any employee who does not wipe out via Kronos

starting tomorrow will be subject to disciplinary action."

## COUNT I

## (VIOLATION OF THE RLA'S STATUS QUO OBLIGATIONS)

36.     The allegations contained in paragraphs 1 through 35 above are

incorporated by reference as if fully set forth in this paragraph.

37.     MNR's implementation of the KRONOS biometric finger scan time

keeping system unilaterally alters established terms and conditions of employment of A.C.R.E.-

represented MNR locomotive engineers while RLA negotiations and mediation are continuing

and without exhausting the mandatory mediation and status quo requirement of the RLA.  There

is no term of the CBA that arguably permits such unilateral MNR action.

38.     MNR is obligated under Section 2 First of the RLA, 45 U.S.C. § 152 First,

to exert every reasonable effort to make and maintain agreements, and under Section 2 Seventh

and Section 6, 45 U.S.C. § 152 Seventh and 156, to exhaust the RLA's mandatory bargaining

process before unilaterally changing rates of pay, rules and working conditions.

39.     MNR neither exerted every reasonable effort to make and maintain its

agreement with A.C.R.E., nor exhausted the RLA's mandatory bargaining process, prior to

unilaterally implementing KRONOS.

40.     By its course of unilateral conduct describe above, MNR has violated the

bargaining and status quo requirements of Section 2 First and Seventh and Section 6 of the RLA.

41.     Unless enjoined, MNR will continue the above-described unlawful

unilateral course of conduct.

## COUNT II

## (VIOLATION OF RLA GOOD FAITH BARGAINING OBLIGATIONS)

42.     The allegations contained in paragraphs 1 through 41 above are

incorporated by reference as if fully set forth herein.

43.     MNR is obligated under Section 2 First, Second, Third and Fourth, of the

RLA, 45 U.S.C. § 152 First, Second, Third, Fourth, to treat, confer, and bargain exclusively and

in good faith with A.C.R.E. with regard to rates of pay, rules, and working conditions for all

employees in the class or craft of MNR locomotive engineers represented by A.C.R.E. and with

regard to all disputes between A.C.R.E. and its locomotive engineers, as represented by A.C.R.E.

MNR is further obligated under these statutory provisions to make every reasonable effort to

make agreements with A.C.R.E. concerning rates of pay, rules, and working conditions, to

maintain such agreements, and to expeditiously consider and attempt to settle all disputes

between MNR and its locomotive engineers, as represented by A.C.R.E.

44.     MNR, by its course of conduct described above, has failed and refused to treat, confer, and bargain exclusively and in good faith with A.C.R.E., to make every reasonable effort to make and maintain agreements with A.C.R.E. or otherwise to negotiate in good faith with A.C.R.E., and to make every reasonable effort to consider and settle all disputes with regard to rates of pay, rules, and working conditions of A.C.R.E.-represented locomotive engineers. This course of bad faith conduct demonstrates that MNR has no sincere intent to reach an agreement with A.C.R.E. and is in violation of the obligations imposed on MNR by Sections 2 First, Second, Third, and Fourth of the RLA, 45 U.S.C. § 152 First, Second, Third, and Fourth.

45.     MNR's course of conduct, as described above, constitutes a failure and refusal to bargain in good faith with A.C.R.E. concerning rates of pay, rules, and working conditions, in violation of MNR's statutory obligations under Section 2 First of the RLA, 45 U.S.C. § 152 First.

46.     Unless enjoined, MNR will continue the above-described unlawful unilateral course of conduct.

## APPROPRIATENESS OF EQUITABLE RELIEF

47.     By the conduct described above, MNR has caused, and is continuing to cause, irreparable injury to A.C.R.E. and the A.C.R.E. locomotive engineers it represents.  MNR will continue to engage in this unlawful course of conduct unless enjoined.

48.     A.C.R.E. has fully complied with all obligations under the CBA and the RLA.

49.     A.C.R.E. has no adequate remedy at law.

## PRAYER FOR RELIEF

**Wherefore**, plaintiff A.C.R.E. respectfully requests that this Court issue the following relief:

1.      Judgment:

(a) Enjoining, ordering, directing, and requiring MNR and its directors, officers, agents, and employees, to refrain from implementing the KRONOS biometric finger scanning system until or unless there has been mutual agreement with A.C.R.E. on its implementation and until the New York State Department of Labor has determined that this system does not violate N.Y. State law, and

(b) Enjoining, ordering, directing, and requiring MNR and its directors, officers, agents, and employees, to recognize and treat exclusively with A.C.R.E. as the collective bargaining representative for MNR locomotive engineers, and to make every reasonable good-faith effort to bargain with, make and maintain agreements, and to settle all disputes with A.C.R.E. with respect to the rates of pay, rules, and working conditions of all MNR locomotive engineers.

2.      A judgment pursuant to 28 U.S.C. §§ 2201 and 2202 declaring the rights of the parties.

3.      A judgment awarding additional relief, as determined by the Court, as may be appropriate to fully remedy the violations of the RLA by MNR and of the rights of the MNR locomotive engineers, as represented by A.C.R.E.

4.      Such other and further relief as this Court may deem appropriate.

Dated: September 18, 2019
      New York, New York

By: _____

Stephen B. Moldof
Evan Hudson-Plush
Joshua J. Ellison
**COHEN, WEISS AND SIMON LLP**
900 Third Avenue, Suite 2100
New York, NY 10022
Telephone:  (212) 356-0210
Facsimile:  (646) 473-8210
smoldof@cwsny.com

*Attorneys for Plaintiff A,C.R.E. Local No. 9*